**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias; A.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias; F.C., a minor by and through his guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, <br><br>       Plaintiffs, <br><br>     v. <br><br> COUNTY OF SANTA BARBARA; and DOES 1-10, inclusive, <br><br>       Defendants. | **Case No. 2:25-cv-10749** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983) <br> 2. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983) <br> 3. First and Fourteenth Amendments – Interference with Familial Association and Relationship (42 U.S.C. § 1983) <br> 4. Municipal Liability – Failure to Train (42 U.S.C. § 1983) <br> 5. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983) <br> 6. Americans With Disabilities Act (42 U.S.C. § 12132) <br> 7. Negligence – Wrongful Death and Survival <br> 8. Failure to Summon Medical Care (Cal. Gov. Code § 845.6) <br> 9. Bane Act (Cal. Civ. Code § 52.1) <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs P.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased; A.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased; and F.C., a minor by and through his guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased, for their Complaint against Defendants, County of Santa Barbara (including its Santa Barbara County Sheriff's Office and its Santa Barbara Main Jail) and DOES 1-10, hereby alleges as follows:

## INTRODUCTION

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants, including the County of Santa Barbara and its Santa Barbara Main Jail, and the County's involved deputies and employees, for violating various rights under the United States Constitution and California law in connection with the in-custody death of Plaintiffs' mother, the deceased, Cecilia Covarrubias, on or around November 13, 2024.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in the County of Santa Barbara, which is within this district and because, on information and belief, all Defendants reside in this district.

4.     The survival claims in this action are joined with the individual wrongful

death claims pursuant to California Code of Civil Procedure § 377.62, as all claims arise out of the same wrongful acts or neglect.

## **PARTIES**

5.   At all relevant times, Cecilia Covarrubias was an individual residing in the County of Santa Barbara.

6.   Plaintiff P.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. P.C. sues both in her individual capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. P.C. seeks both survival and wrongful death damages under federal and state law.

7.   Plaintiff A.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. A.C. sues both in her individual capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. A.C. seeks both survival and wrongful death damages under federal and state law.

8.   Plaintiff F.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. F.C. sues both in his individual capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. F.C. seeks both survival and wrongful death damages under federal and state law.

9.   At all relevant times, Defendant COUNTY OF SANTA BARBARA ("COUNTY") is and was a duly organized municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Santa

Barbara County Sheriff's Office ("SBSO") and its agents and employees, and the Santa Barbara Main Jail ("SBMJ") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of some or all of the named Defendants, including DOES 1-10.

10. Defendants DOES 1-10 ("DOE OFFICERS") are deputies and correctional officers for the COUNTY, including at SBMJ, including those employed as nurses and other medical professionals, as well as officers responsible for identifying medical and mental health issues and providing medical attention, medical screening, and medical care to inmates and detainees. DOES 1-10 include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor. DOE OFFICERS also include those responsible for transporting inmates and detainees within the SBMJ facility. DOE OFFICERS were at all relevant times acting under color of law and within the course and scope of their employment with the COUNTY and SBMJ. At all relevant times, DOE OFFICERS were acting with complete authority and ratification of their principal, Defendant COUNTY.

11. Defendants DOES 1-10 are sued in their individual capacities.

12. On information and belief, Defendants DOES 1-10 were residents of the County of Santa Barbara, California.

13. In doing the acts and failing and omitting to act as described herein, Defendants DOES 1-10 were acting on the implied and actual permission and consent of Defendants COUNTY, and the SBSO and SBMJ.

14. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of this Court to amend this Complaint when the true names and capacities of these defendants have been ascertained.

15.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

16.     On May 7, 2025, Plaintiffs filed comprehensive and timely claims for damages with the County of Santa Barbara pursuant to applicable sections of the California Government Code. The claims were rejected by operation of law on June 21, 2025. As of the date of this filing, Plaintiffs have not received any response to the claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

18.     In November 2024, law enforcement officials arrested and detained Ms. Covarrubias and transported her to SBMJ.

19.     After arriving at SBMJ, Ms. Covarrubias was booked and screened by one or more of DOE OFFICERS.

20.     On information and belief, during the booking and screening process and/or after being initially housed at SBMJ, Ms. Covarrubias made statements to one or more jail staff that she was experiencing suicidal thoughts.

21.     Based on Ms. Covarrubias's statements and conduct, SBMJ staff placed her in a temporary cell for mental health observation.

22.     On information and belief, DOE OFFICERS should have placed Ms. Covarrubias on suicide watch, including based on her statements that she was suicidal.

23.     On information and belief, the DOE OFFICERS who booked and screened Ms. Covarrubias were not qualified to perform medical and/or mental health screening, to identify whether a detainee posed a suicide risk, or to appropriately assign detainees to cells based on their medical and/or mental health condition and suicide risk.

24.     On information and belief, Ms. Covarrubias was not properly and adequately

screened by a Registered Nurse upon her initial arrival to and booking at SBMJ to determine her fitness for incarceration at the SBMJ—not in person, and not through "telemedicine."

25. Despite their knowledge of Ms. Covarrubias's suicidal statements, she was not placed on suicide watch. Rather, DOE OFFICERS placed her in a single observation cell containing a corded telephone. On information and belief, SBSD and SBMJ suicide watch protocols require placement of detainees in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that is visible via a continuous remote video feed that is continually monitored by jail staff; that contains no elevated objects/locations to which items may be tied; and that contains no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects. Pursuant to Title 15 and basic jail training, suicide watch protocols further require frequent in-person monitoring of detainees at 15-minute intervals by jail staff.

26. On information and belief, contrary to the suicide watch protocols, the cell into which DOE OFFICERS placed Ms. Covarrubias was housed was not subject to full and continuous video monitoring of the entire cell by jail staff and, on information and belief, the video feed was not continuously monitored by jail staff, including Defendants DOE OFFICERS. Also contrary to the suicide watch protocols, the cell where Ms. Covarrubias was housed contained a phone fixed against the wall with a cord attached and, on information and belief, was monitored by DOE OFFICERS less frequently than every 15 minutes.

27. These failures to increase the frequency of monitoring of Ms. Covarrubias or move her to a suicide watch protocol–compliant cell was due in part to the dismissal of her suicidal statements by DOE OFFICERS, and their knowing failure to communicate her suicidal ideation to other SBSO and/or SBMJ officials or otherwise take it seriously.

28.     During the 3 or 4 o'clock hour on November 13, 2024, Ms. Covarrubias tied the cord attached to the wall-mounted phone in her cell around her neck and hanged herself.

29.     Ms. Covarrubias's cell was not checked until approximately 4:48 p.m., which, on information and belief, was a substantial period of time after her death by suicide. DOE OFFICERS should have observed Ms. Covarrubias immediately had they been continuously monitoring her cell, or far sooner had they been performing checks every 15 minutes. Had they done so, they would have found Ms. Covarrubias within enough time to provide life-saving medical attention. The failure of the DOE OFFICERS to continuously monitor Ms. Covarrubias or to check on her at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training, directly resulted in her death.

30.     After delayed medical attention and unsuccessful attempts to resuscitate Ms. Covarrubias, she was pronounced deceased by paramedics.

31.     As alleged above, Defendants DOE OFFICIALS failed to provide appropriate medical and/or mental health attention to Ms. Covarrubias before she hanged herself. These failures include, but are not limited to, these Defendants' failures to recognize the increased mental health and suicide risks posed by Ms. Covarrubias, of which, on information and belief, she had advised these Defendants.

32.     DOE OFFICIALS also failed to provide sufficient and immediate medical attention to Ms. Covarrubias after she hanged herself. On information and belief, an Automated External Defibrillator ("AED") was not used as a life-saving measure on Ms. Covarrubias until after the paramedics arrived, and use of an AED or other life-saving equipment immediately after she was found hanging in her cell (as opposed to merely chest compressions) could have prevented her death.

33.     Defendants were negligent in their conduct, including but not limited to negligence in SBMJ procedures for screening, intake and housing of those in need of mental and medical health care, those who verbalize suicidal threats or ideation, and those

who otherwise present identifiable suicide risks. Defendants DOE OFFICERS were negligently trained with respect to providing mental and medical care to detainees suffering from mental illness and presenting suicide risks.

34.    Alternatively, Defendant COUNTY unreasonably failed to equip SBMJ with sufficient suicide watch–compliant cells that did not provide detainees with the means by which to kill themselves while under the custody, care, and supervision of the COUNTY and DOE OFFICIALS.

35.    Each of the named and unnamed Defendants were integral participants in the denial of medical and mental health care, the failure to protect Ms. Covarrubias, the negligent treatment of Ms. Covarrubias, and other violations of Ms. Covarrubias's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)

### (Plaintiffs against Defendants DOES 1-10)

36.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

37.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail officials are deliberately indifferent to foreseeable risks of harm to detainees.

38.    As alleged above, Defendants had actual knowledge of Ms. Covarrubias's suicidal ideations and related risks to her safety based on her statements and conduct to Defendants indicating that she was thinking of or intending to kill herself.

39.    Despite Defendants having actual knowledge of Ms. Covarrubias's suicidal ideations, on information and belief, she was not properly and adequately screened during intake. Moreover, Ms. Covarrubias was improperly housed at SBMJ, including in that she was not placed in a continuously monitored cell; in that items such as a corded phone,

with which she could (and did) kill herself, were not removed from her cell; and in that she was not in the first instance placed in a cell that contained no such items. Defendants DOE OFFICERS were objectively indifferent to the foreseeable and known risk that Ms. Covarrubias would harm herself or commit suicide when they failed to ensure that prompt and adequate attention was provided to her upon booking at SBMJ, including failure to place her in an adequately monitored cell and including failing to adequately monitor her (both in terms of frequency and closeness of attention). These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Ms. Covarrubias's serious risk of harm, and the indifference to her risk of harm as alleged above was substantial.

40.    In addition to Ms. Covarrubias not being properly screened at intake, Defendants DOE OFFICERS returned her to a cell that was not adequate to mitigate her suicide risk, having actual knowledge of her suicidal ideations, thereby making an intentional decision to house her in a cell that was not suicide-watch compliant. This demonstrates deliberate indifference. Defendants DOE OFFICERS were deliberately indifferent to Ms. Covarrubias's serious risk of harm when they failed to ensure that prompt and adequate attention was provided to her in the form of suicide prevention. These defendants failed to continuously monitor Ms. Covarrubias.

41.    Defendants thus made intentional decisions regarding Ms. Covarrubias's confinement as alleged above. These conditions put her at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to protect her from this risk despite obvious consequences of not adequately acting upon her suicidal ideations, and by not taking reasonable action to protect her from her suicidal ideations, Defendants caused her injury and death.

42.    Ms. Covarrubias's risk of harm was serious, in that the failure to respond to her suicidal ideations and desire to harm herself resulted in her death.

43.    Ms. Covarrubias was entitled to receive protection from the known risk of harm to her life while in the care and custody of the COUNTY while

detained/incarcerated at SBMJ. In doing the acts complained of, Defendants failed to protect her from a known risk of serious harm in violation of her rights under the Due Process Clause of the Fourteenth Amendment.

44.    Defendants knew that failure to protect Ms. Covarrubias could result in Ms. Covarrubias harming or killing herself, but disregarded that serious risk, directly causing Ms. Covarrubias great bodily harm and death.

45.    Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Ms. Covarrubias. Defendants were deliberately indifferent to a substantial risk of serious harm to Ms. Covarrubias. Defendants' conduct served no legitimate penological purpose.

46.    Defendants are liable for the failure to protect Ms. Covarrubias, and for her injuries and death, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

47.    As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died and lost her earning capacity.

48.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

49.    The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Ms. Covarrubias, and therefore warrants the imposition of exemplary and punitive damages.

50.    Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and seek survival and wrongful death damages under this claim. Plaintiffs seek damages, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of

life and of enjoyment of life, and for their loss of financial support. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

### (Plaintiffs against Defendants DOES 1-10)

51.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

52.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail or prison officials are deliberately indifferent to detainees' medical needs.

53.    As alleged above, Defendants had actual knowledge of Ms. Covarrubias's suicidal ideations and related mental health needs.

54.    Despite Defendants having actual knowledge of Ms. Covarrubias's suicidal ideations at the time of and following her booking at SBMJ, on information and belief, she was not properly and adequately screened by a Registered Nurse or any other medical or mental health professional during intake to determine her fitness for incarceration. The mental health evaluation that she did receive was cursory, inadequate, and did not comply with basic police training and SBMJ protocols regarding handling situations where a detainee states or otherwise clearly indicates that she is suicidal. Ms. Covarrubias was denied prompt and adequate medical attention when these Defendants improperly and prematurely released her from the minimal and inadequate suicide evaluation they performed, even though she remained suicidal. This demonstrates deliberate indifference.

55.    Moreover, despite Ms. Covarrubias's clear statements that she was suicidal, she was improperly housed at SBMJ, including in that she was not placed on suicide watch and/or in a continuously monitored cell, and that items such as a telephone cord, with which she could (and did) harm herself, were not removed from her cell. Defendants DOE OFFICERS were objectively indifferent to Ms. Covarrubias's serious medical and

mental health needs when they failed to ensure that prompt and adequate medical attention was provided to her upon booking at SBMJ as described herein. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Ms. Covarrubias's serious and immediate medical needs in the form of suicidal ideation, and the indifference to her medical needs as alleged above was substantial.

56.     Defendants DOE OFFICERS placed Ms. Covarrubias's in her cell, a cell that was not adequate to mitigate her suicide risk, having actual knowledge of her suicidal ideations. Defendants DOE OFFICERS were deliberately indifferent to Ms. Covarrubias's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to her, both before and after she hanged herself. These defendants failed to seek out a competent evaluation with a psychiatrist for Ms. Covarrubias. Upon information and belief, these defendants failed to notify other officials of her suicidal ideations. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to Ms. Covarrubias's medical need as alleged above was substantial.

57.     Despite their awareness of Ms. Covarrubias's desire to kill herself, Defendants DOE OFFICERS failed to place her on suicide watch. These Defendants failed to continuously monitor her or place her in an adequately monitored cell, and failed to otherwise properly and promptly address her suicidal ideations. These Defendants took no actions to remove items from her cell that she could use to harm herself, including the corded telephone. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to Ms. Covarrubias's medical need as alleged above was substantial.

58.     Defendants thus made intentional decisions regarding Ms. Covarrubias's confinement as alleged above. These conditions put her at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating her suicidal ideations, and by not treating her

suicidal ideations, Defendants caused her injury and death.

59.    Ms. Covarrubias's medical need was serious, in that the failure to treat her suicidal ideations and desire to harm herself resulted in her death. Her need was obvious, in that she stated that she was suicidal and presented a suicidal affect.

60.    Ms. Covarrubias was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at SBMJ.  In doing the acts complained of, Defendants deprived her of urgently needed medical care in violation of her rights under the Due Process Clause of the Fourteenth Amendment.

61.    Defendants knew that failure to provide timely medical treatment to Ms. Covarrubias could result in her harming or killing herself, but disregarded that serious medical need, directly causing her great bodily harm and death.

62.    As alleged above, Defendants also failed to provide sufficient and immediate medical attention to Ms. Covarrubias after she hanged herself. On information and belief, an Automated External Defibrillator ("AED") was not used as a life-saving measure on her until after the paramedics arrived, and use of an Automated External Defibrillator ("AED") or other life-saving equipment immediately after she was found hanging in her cell (as opposed to merely chest compressions) could have prevented her death. This evidences Defendants' deliberate indifference toward her serious medical needs.

63.    Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Ms. Covarrubias. Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of Ms. Covarrubias. Defendants' conduct served no legitimate penological purpose.

64.    Defendants are liable for the denial of medical care to Ms. Covarrubias, and for her injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

65.    As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died and lost her

1  earning capacity.

2      66.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs

3  suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived

4  of the life-long love, companionship, comfort, support, society, care, and sustenance of

5  Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural

6  lives.

7      67.    The conduct of Defendants was willful, wanton, malicious, and done with a

8  reckless disregard for the rights and safety of Ms. Covarrubias, and therefore warrants the

9  imposition of exemplary and punitive damages.

10      68.    Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and

11  seek survival and wrongful death damages under this claim. Plaintiffs seek damages,

12  including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of

13  life and of enjoyment of life, and for their loss of financial support. Plaintiffs also seek

14  reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

15                    **THIRD CLAIM FOR RELIEF**

16  **First and Fourteenth Amendments – Substantive Due Process, Interference with**

17              **Familial Association and Relationship (42 U.S.C. § 1983)**

18                  **(Plaintiffs against Defendants DOES 1-10)**

19      69.    Plaintiffs repeat and re-allege each and every allegation in the foregoing

20  paragraphs of this Complaint as though fully set forth herein.

21      70.    Plaintiffs have a cognizable interest under the Due Process Clause of the

22  Fourteenth Amendment to the United States Constitution to be free from state actions that

23  deprive them of life, liberty, or property in such a manner as to shock the conscience,

24  including but not limited to unwarranted state interference in their familial relationship

25  with their mother, Ms. Covarrubias.

26      71.    As alleged above, Defendants DOE OFFICERS had actual knowledge of Ms.

27  Covarrubias's suicidal ideations and intentions, yet failed to take necessary steps to

28  protect her from harm, including by placing her in a cell with a clear door or large window

on the door allowing a full view of the cell from the hall outside; that was visible via a continuous remote video feed that is continually monitored by jail staff; that contained no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects; and where she would be monitored in person at 15-minute intervals by jail staff.

72.    Defendants DOE OFFICERS further failed to secure adequate medical or mental health treatment for Ms. Covarrubias or provide same, as alleged above, despite their knowledge of her serious need for such care.

73.    These actions of Defendants DOE OFFICERS, along with other undiscovered conduct, shock the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of Ms. Covarrubias and Plaintiffs.

74.    Defendants DOE OFFICERS thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with her familial relationship with Ms. Covarrubias, their mother.

75.    As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. Also, as a direct and proximate cause of the acts of Defendants DOE OFFICERS, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

76.    The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Ms. Covarrubias, and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

77.    Plaintiffs bring this claim in their individual capacities and seek compensatory damages under this claim, including for the loss of love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, as well as for their

own emotional distress, mental anguish, and pain. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### (By Plaintiffs Against Defendant COUNTY)

78.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

79.    The acts of Defendants DOE OFFICERS deprived Ms. Covarrubias and Plaintiffs of their particular rights under the United States Constitution, as alleged herein.

80.    Defendants DOE OFFICERS acted under color of law.

81.    On information and belief, Defendant COUNTY failed to properly and adequately train Defendants DOE OFFICERS on subject matters COUNTY knew these other Defendants were virtually certain to have to address in the course of their work for COUNTY, including but not limited to the provision of medical and mental health attention and the provision of protection to suicidal detainees.

82.    The training policies of Defendant COUNTY were not adequate to train its deputies and correctional officers at SBSO and the SBMJ to handle the usual and recurring situations with which they must deal, including but not limited to medical and mental health screening during intake at SBMJ, the provision of prompt and adequate medical and mental health care, and the implementation of suicide watch protocols for detainees who pose a known risk of self-harm. As stated above, upon arrival to SBMJ, Ms. Covarrubias was not provided with needed health care, nor was she properly screened by a nurse to evaluate her overall physical fitness for incarceration. This is a clear violation of the policies of SBSO and the SBMJ, and Defendant COUNTY did not adequately train Defendants DOE OFFICERS with regard to said policies.

83.    Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

84.     The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiffs' and Ms. Covarrubias's rights by Defendants DOE OFFICERS; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of Plaintiffs' and Ms. Covarrubias's rights as to be the moving force that caused their ultimate injuries.

85.     As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. As a direct and proximate cause of the acts of Defendants DOE OFFICERS, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives. Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

86.     Plaintiffs bring this claim as successor in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Policy, or Practice

### (42 U.S.C. § 1983)

### (By Plaintiffs Against Defendant COUNTY)

87.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

88.     Defendants DOE OFFICERS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not providing needed medical and mental health care or

immediate screening by a nurse to evaluate the overall fitness of those in custody for incarceration; of mishandling situations with individuals who suffer from mental health issues; and of failing to place detainees who communicate suicidal intentions to staff on suicide watch and following suicide watch protocols.

89.    On information and belief, Defendants DOE OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Ms. Covarrubias's death.

90.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Ms. Covarrubias. The aforementioned acts and omissions also caused Ms. Covarrubias's pain and suffering, loss of enjoyment of life, and death.

91.    Defendant COUNTY, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Ms. Covarrubias, Plaintiffs, and other individuals similarly situated.

92.    Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind the injuries of Ms. Covarrubias and Plaintiffs.

93.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Ms. Covarrubias. The aforementioned acts and omissions also caused Ms. Covarrubias's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

94.    Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in

their individual capacities and seek survival, wrongful death, and other compensatory damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF

### Americans with Disabilities Act (42 U.S.C. § 12132)

### (By Plaintiffs Against All Defendants)

95.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

96.    Ms. Covarrubias was a "qualified individual" with a mental illness that substantially limited her ability to care for herself and control her mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

97.    COUNTY is a covered entity for purposes of enforcement of the ADA as explained by regulations promulgated under that law.

98.    Under the ADA, COUNTY is mandated to develop effective procedures for the care of mentally ill individuals in its custody, for interactions with individuals with mental disabilities, and to ensure the protection of these individuals' personal and civil rights.

99.    In enacting the ADA, Congress found that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. § 12101(a)(2).

100.    COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. § 12182(a).

101.    COUNTY and DOE OFFICERS violated the ADA by: (1) COUNTY failing to properly train its employees, including DOE OFFICERS and other SBSO and SBMJ staff, to respond with appropriate care to individuals with mental health impairments in its

custody, including by providing protection to them from known risks of harm, including self-harm, and by providing medical care they are known to need; and (2) DOE OFFICERS failing to follow procedures for intervention to prevent or stop attempts at self-harm or suicide by mentally ill detainees, including those who known to pose a risk of same

102.   As a direct and proximate result of Defendants' acts and omissions as alleged above, Ms. Covarrubias was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

103.   Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seeks reasonable attorney's fees and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**

**Negligence – Wrongful Death and Survival**

**(By Plaintiffs against all Defendants)**

104.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

105.   Defendants DOE OFFICERS were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes providing prompt and adequate medical and mental health care to individuals in their custody, identifying and handling medical and mental health issues, screening detainees for fitness for

incarceration, determining housing classification status for detainees, and protecting detainees from reasonably foreseeable harm from themselves or others.

106.    Defendants DOE OFFICERS breached their duty of care. The actions and inactions of Defendants DOE OFFICERS were negligent and reckless, including but not limited to, the neglect tactics and handling of the situation with Ms. Covarrubias, including failing to identify serious medical and mental health issues, failing to provide prompt medical and mental health care to her, failing to house her in a suicide-watch compliant cell, and failing to take reasonable steps to prevent her death by suicide after they had notice of her suicidal intentions, including by monitoring her by live video feed and/or by conducting required in-person observations at 15-minute intervals. Moreover, COUNTY failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Ms. Covarrubias, and to ensure that adequate housing options were available to protect suicidal detainees, including housing options that contained no means by which suicidal detainees could readily act on their suicidal intentions.

107.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Ms. Covarrubias was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

108.    COUNTY is vicariously liable for the wrongful acts of Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

109.    Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this

claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of Ms. Covarrubias's love, companionship, guidance, advice, and support.

## EIGHTH CLAIM FOR RELIEF

### Failure to Summon Medical Care (Cal. Gov. Code § 845.6)

### (By Plaintiffs against all Defendants)

110.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

111.    Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that a detainee under his care or supervision is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

112.    Defendants were aware of Ms. Covarrubias's medical emergency, in that she had informed them of her suicidal ideations and intention to kill herself. In other words, as alleged above, Ms. Covarrubias's medical emergency was obvious. Defendants are not entitled to immunity where a detainee is in obvious need of medical care.

113.    Despite Defendants' actual knowledge that Ms. Covarrubias was in need of immediate medical and mental care as alleged above, Defendants failed to (1) conduct a proper medical and mental health assessment and/or suicide evaluation of her; (2) summon immediate emergency medical assistance for her, both before and after she was found unresponsive; (3) place her on suicide watch when she was known to be suicidal and have a propensity for self-harm; (4) adequately monitor and supervise her; or (5) recognize and identify indications of suicidal tendencies.

114.    COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California

Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that a detainee is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

115.   As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

116.   Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their Ms. Covarrubias's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs.

## NINTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### (By Plaintiffs against all Defendants)

117.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

118.   California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to

1   violate a person's constitutional rights can be shown by a reckless disregard for that

2   person's constitutional rights.

3       119.   Here, Defendants acted with reckless disregard for Ms. Covarrubias's and

4   Plaintiffs' constitutional rights as set forth above. In particular, Defendants had specific

5   knowledge of Ms. Covarrubias's suicidal ideation and intention to harm herself but failed

6   to take action to protect her, demonstrating reckless disregard for her and Plaintiffs' First

7   and Fourteenth Amendment rights.

8       120.   When Defendants engaged in their misconduct and inactions as alleged

9   above—including failing to provide medical care and mental health treatment to Ms.

10  Covarrubias, who was exhibiting suicidal ideations and a propensity for self-harm, even

11  when Defendants had direct information that she desired to harm or kill herself—

12  Defendants acted with reckless disregard for her and Plaintiffs' constitutional rights,

13  including her constitutional right to timely and adequate medical attention and to

14  protection from harm, and Plaintiffs' constitutional right to be free from interference with

15  their familial relationship with their mother.

16      121.   The conduct of Defendants as alleged above was a substantial factor in

17  causing Plaintiffs' and Ms. Covarrubias's harms, losses, injuries, and damages.

18      122.   The COUNTY is vicariously liable for the wrongful acts of all named

19  Defendants pursuant to section 815.2(a) of the California Government Code, which

20  provides that a public entity is liable for the injuries caused by its employees within the

21  scope of the employment if the employee's act would subject him or her to liability.

22      123.   The conduct of Defendants was malicious, wanton, oppressive, and

23  accomplished with a conscious disregard for Ms. Covarrubias's and Plaintiffs' rights,

24  justifying an award of exemplary and punitive damages as to the individual Defendants.

25      124.   As a direct and proximate result of the aforementioned conduct, Ms.

26  Covarrubias suffered injuries, including pain and suffering, and then died, losing her

27  earning capacity. Also, as a direct and proximate cause of the acts of Defendants as

28  alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs

also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

125.   Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and other compensatory damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of Ms. Covarrubias love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs under this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty, including a multiplier.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants COUNTY OF SANTA BARBARA and DOES 1-10 as follows:

a.  For compensatory damages and whatever other amount may be proven at trial, including survival damages and wrongful death damages under federal and state law;

b.  For loss of financial support;

c.  For pre-death pain and suffering, loss of life, and loss of enjoyment of life according to proof at trial;

d.  For punitive damages against the individual Defendants according to proof at trial;

e.  For statutory damages;

f.  For interest;

g.  For reasonable attorney's fees, including litigation expenses;

h.  For costs of suit; and

i.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: November 7, 2025                **LAW OFFICES OF DALE K. GALIPO**

By: _____
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

## **REQUEST FOR JURY TRIAL**

Plaintiffs request a trial by jury for all causes of action to which they are entitled to a jury.

DATED: November 7, 2025

**LAW OFFICES OF DALE K. GALIPO**

By: _____
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Plaintiffs*