# EXHIBIT B

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias; A.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias; F.C., a minor by and through his guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SANTA BARBARA; WELLPATH; CALIFORNIA FORENSIC MEDICAL GROUP, INC.; CAMRYN DURNIN-MOORE; ANTONIO RODRIGUEZ MADRIGAL; JOAQUIN ARRELLANO QUINTERO; RAYMONDO JESUS ESTRADA; SAMANTHA HANSEN; KAYLA FORTENBERRY; TRAVIS TAYLOR; ERICA COOLMAN; AMANDA OCCHIPINTI; DEBORAH WELLS; JOE | Case No. 2:25-cv-10749-FLA-MAA <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983) <br> 2. Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983) <br> 3. First and Fourteenth Amendments – Interference with Familial Association and Relationship (42 U.S.C. § 1983) <br> 4. Municipal Liability – Failure to Train (42 U.S.C. § 1983) <br> 5. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983) <br> 6. Americans With Disabilities Act (42 U.S.C. § 12132) <br> 7. Negligence – Wrongful Death and Survival <br> 8. Failure to Summon Medical Care (Cal. Gov. Code § 845.6) <br> 9. Bane Act (Cal. Civ. Code § 52.1) <br><br> **DEMAND FOR JURY TRIAL** |

1

SECOND AMENDED COMPLAINT FOR DAMAGES

GONZALEZ; JESSICA LOPEZ; YALDA SAFAI; and DOES 1-10, inclusive,

Defendants.

Plaintiffs P.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased; A.C., a minor by and through her guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased; and F.C., a minor by and through his guardian Felix Carrasco III, individually and as successor-in-interest to Cecilia Covarrubias, deceased, for their Complaint against Defendants, County of Santa Barbara (including its Santa Barbara County Sheriff's Office and its Santa Barbara Main Jail); WELLPATH; CALIFORNIA FORENSIC MEDICAL GROUP, INC.; CAMRYN DURNIN-MOORE; ANTONIO RODRIGUEZ MADRIGAL; JOAQUIN ARRELLANO QUINTERO; RAYMONDO JESUS ESTRADA; SAMANTHA HANSEN; KAYLA FORTENBERRY; TRAVIS TAYLOR; ERICA COOLMAN; AMANDA OCCHIPINTI; DEBORAH WELLS; JOE GONZALEZ; JESSICA LOPEZ; YALDA SAFAI; and DOES 1-10, hereby allege as follows:

## **INTRODUCTION**

1. This civil rights and state tort action seeks compensatory and punitive damages from Defendants, including the County of Santa Barbara and its Santa Barbara Main Jail, Wellpath, California Forensic Medical Group, and the County's and these organizations' involved deputies and employees, for violating various rights under the United States Constitution and California law in connection with the in-custody death of Plaintiffs' mother, the deceased, Cecilia Covarrubias, on or around November 13, 2024.

## **JURISDICTION AND VENUE**

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States

SECOND AMENDED COMPLAINT FOR DAMAGES

Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in the County of Santa Barbara, which is within this district and because, on information and belief, all Defendants reside in this district.

4.    The survival claims in this action are joined with the individual wrongful death claims pursuant to California Code of Civil Procedure § 377.62, as all claims arise out of the same wrongful acts or neglect.

## PARTIES

5.    At all relevant times, Cecilia Covarrubias was an individual residing in the County of Santa Barbara.

6.    Plaintiff P.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. P.C. sues both in her individual capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. P.C. seeks both survival and wrongful death damages under federal and state law.

7.    Plaintiff A.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. A.C. sues both in her individual capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. A.C. seeks both survival and wrongful death damages under federal and state law.

8.    Plaintiff F.C. is an individual residing in the County of Tulare, California, and is the natural minor child of Ms. Covarrubias. F.C. sues both in his individual

SECOND AMENDED COMPLAINT FOR DAMAGES

capacity as the minor child of Ms. Covarrubias and in a representative capacity as a successor-in-interest to Ms. Covarrubias pursuant to California Code of Civil Procedure §§ 377.30 and 377.60. F.C. seeks both survival and wrongful death damages under federal and state law.

9.      Felix Carrazco III is the natural father and legal guardian for all purposes of Plaintiffs P.C., A.C., and F.C and qualifies as their "general guardian" within the meaning of Federal Rule of Civil Procedure 17(c)(1)(A). Felix Carrazco III is a competent adult and has no adverse interest to the minor Plaintiffs in this action and thus is best suited to represent their interests in this action. Accordingly, no court appointment of a Guardian *ad Litem* or other representative is required under Federal Rule of Civil Procedure 17(c)(2) or Local Rule 17-1.1.

10.      At all relevant times, Defendant COUNTY OF SANTA BARBARA ("COUNTY") is and was a duly organized municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Santa Barbara County Sheriff's Office ("SBSO") and its agents and employees, and the Santa Barbara Main Jail ("SBMJ") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of some or all of the named Defendants, including DOES 1-10.

11.      Defendant CAMRYN DURNIN-MOORE ("DURNIN-MOORE") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant DURNIN-MOORE was at all relevant times acting under color of law and within the course and scope of her duties as a deputy for the SBSO and the COUNTY. Defendant DURNIN-MOORE was at all relevant times acting

SECOND AMENDED COMPLAINT FOR DAMAGES

with complete authority and ratification of her principal, Defendant COUNTY. Upon information and belief, Defendant DURNIN-MOORE was and is a resident of this judicial district.

12. Defendant ANTONIO RODRIGUEZ MADRIGAL ("MADRIGAL") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant MADRIGAL was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the SBSO and the COUNTY. Defendant MADRIGAL was at all relevant times acting with complete authority and ratification of his principal, Defendant COUNTY. Upon information and belief, Defendant MADRIGAL was and is a resident of this judicial district.

13. Defendant JOAQUIN ARRELLANO QUINTERO ("QUINTERO") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant QUINTERO was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the SBSO and the COUNTY. Defendant QUINTERO was at all relevant times acting with complete authority and ratification of his principal, Defendant COUNTY. Upon information and belief, Defendant QUINTERO was and is a resident of this judicial district.

14. Defendant RAYMONDO JESUS ESTRADA ("ESTRADA") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant ESTRADA was at all relevant times acting under color of law and within the course and scope of his duties as a deputy for the SBSO and the COUNTY. Defendant ESTRADA was at all relevant times acting with complete authority and ratification of his principal, Defendant COUNTY. Upon information and belief, Defendant ESTRADA was and is a resident of this judicial district.

15. Defendant SAMANTHA HANSEN ("HANSEN") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant HANSEN was at all relevant times acting under color of

SECOND AMENDED COMPLAINT FOR DAMAGES

law and within the course and scope of her duties as a deputy for the SBSO and the COUNTY. Defendant HANSEN was at all relevant times acting with complete authority and ratification of her principal, Defendant COUNTY. Upon information and belief, Defendant HANSEN was and is a resident of this judicial district.

16.    Defendant KAYLA FORTENBERRY ("FORTENBERRY") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant FORTENBERRY was at all relevant times acting under color of law and within the course and scope of her duties as a deputy for the SBSO and the COUNTY. Defendant FORTENBERRY was at all relevant times acting with complete authority and ratification of her principal, Defendant COUNTY. Upon information and belief, Defendant FORTENBERRY was and is a resident of this judicial district.

17.    Defendant TRAVIS TAYLOR ("TAYLOR") is a Sheriff's deputy for the COUNTY and the SBSO who, at all relevant times, was working at SBMJ as a correctional deputy. Defendant TAYLOR was at all relevant times acting under color of law and within the course and scope of his/her duties as a deputy for the SBSO and the COUNTY. Defendant TAYLOR was at all relevant times acting with complete authority and ratification of his/her principal, Defendant COUNTY. Upon information and belief, Defendant TAYLOR was and is a resident of this judicial district.

18.    Upon information and belief, Defendant WELLPATH was and is a corporate entity duly organized under and by virtue of the laws of the state of Tennessee, doing business across the United States including in the State of California. Upon information and belief, at all relevant times Defendant WELLPATH was contracted with COUNTY to provide medical and mental health services to detainees and inmates who are in the custody and care of the COUNTY and its SBSO, including at the SBMJ. At all relevant times, Defendant WELLPATH and its agents and employees, including those identified herein below, acted under color of law, under the direction and agency of COUNTY for purposes of providing medical and mental health services to inmates and detainees in

SECOND AMENDED COMPLAINT FOR DAMAGES

COUNTY's custody and care. Private entities under contract with state and local governments may be held liable under 42 U.S.C. § 1983.

19. Upon information and belief, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG") was and is a corporate entity duly organized under and by virtue of the laws of the state of California. Upon information and belief, Defendant CFMG is a subsidiary of Defendant WELLPATH. Upon information and belief, at all relevant times Defendant CFMG was contracted with COUNTY to provide medical and mental health services to detainees and inmates who are in the custody and care of the COUNTY and its SBSO, including at the SBMJ. At all relevant times, Defendant CFMG and its agents and employees, including those identified herein below, acted under color of law, under the direction and agency of COUNTY for purposes of providing medical and mental health services to inmates and detainees in COUNTY's custody and care. Private entities under contract with state and local governments may be held liable under 42 U.S.C. § 1983.

20. Defendant ERICA COOLMAN ("COOLMAN") is a nurse working for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant COOLMAN was employed by Defendant COUNTY. Alternatively, upon information and belief, Defendant COOLMAN was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant COOLMAN was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant COOLMAN was at all relevant times acting under color of law and within the course and scope of her duties as a nurse for the COUNTY, WELLPATH, and CFMG. Defendant COOLMAN was at all relevant times acting with complete authority and ratification of her principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant COOLMAN was and is a resident in this judicial district.

21. Defendant AMANDA OCCHIPINTI ("OCCHIPINTI") is a nurse working for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant OCCHIPINTI was employed by Defendant COUNTY. Alternatively, upon information

SECOND AMENDED COMPLAINT FOR DAMAGES

and belief, Defendant OCCHIPINTI was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant OCCHIPINTI was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant OCCHIPINTI was at all relevant times acting under color of law and within the course and scope of her duties as a nurse for the COUNTY, WELLPATH, and CFMG. Defendant OCCHIPINTI was at all relevant times acting with complete authority and ratification of her principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant OCCHIPINTI was and is a resident in this judicial district.

22.    Defendant DEBORAH WELLS ("WELLS") is a mental health clinician working for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant WELLS was employed by Defendant COUNTY. Alternatively, upon information and belief, Defendant WELLS was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant WELLS was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant WELLS was at all relevant times acting under color of law and within the course and scope of her duties as a nurse for the COUNTY, WELLPATH, and CFMG. Defendant WELLS was at all relevant times acting with complete authority and ratification of her principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant WELLS was and is a resident in this judicial district.

23.    Defendant JOE GONZALEZ ("GONZALEZ") is a mental health clinician working for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant GONZALEZ was employed by Defendant COUNTY. Alternatively, upon information and belief, Defendant GONZALEZ was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant GONZALEZ was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant GONZALEZ was at all relevant times acting under color of law and within the course and scope of her duties as a nurse for the COUNTY, WELLPATH, and CFMG. Defendant GONZALEZ was at all relevant times acting with complete authority and

SECOND AMENDED COMPLAINT FOR DAMAGES

ratification of his principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant GONZALEZ was and is a resident in this judicial district.

24.    Defendant JESSICA LOPEZ ("LOPEZ") is a mental health clinician and mobile crisis team member working for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant LOPEZ was employed by Defendant COUNTY. Alternatively, upon information and belief, Defendant LOPEZ was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant LOPEZ was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant LOPEZ was at all relevant times acting under color of law and within the course and scope of her duties as a nurse for the COUNTY, WELLPATH, and CFMG. Defendant LOPEZ was at all relevant times acting with complete authority and ratification of her principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant LOPEZ was and is a resident in this judicial district.

25.    Defendant YALDA SAFAI ("SAFAI") is a medical doctor working and providing mental health services for the COUNTY and its SBSO at the SBMJ. Upon information and belief, Defendant SAFAI was employed by Defendant COUNTY. Alternatively, upon information and belief, Defendant SAFAI was employed by Defendant WELLPATH and/or Defendant CFMG. At all relevant times, Defendant SAFAI was a duly appointed agent of Defendants COUNTY, WELLPATH, and CFMG. Defendant SAFAI was at all relevant times acting under color of law and within the course and scope of her duties as a doctor providing mental health services for the COUNTY, WELLPATH, and CFMG. Defendant SAFAI was at all relevant times acting with complete authority and ratification of her principals, Defendants COUNTY, WELLPATH, and CFMG. Upon information and belief, Defendant SAFAI was and is a resident in this judicial district.

26.    Defendants DOES 1-10 ("DOE OFFICERS") are deputies and correctional officers for the COUNTY, including at SBMJ, including those employed as nurses and

SECOND AMENDED COMPLAINT FOR DAMAGES

other medical professionals, as well as officers responsible for identifying medical and mental health issues and providing medical attention, medical screening, and medical care to inmates and detainees. DOES 1-10 include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor. DOE OFFICERS also include those responsible for transporting inmates and detainees within the SBMJ facility. DOE OFFICERS were at all relevant times acting under color of law and within the course and scope of their employment with the COUNTY and SBMJ. At all relevant times, DOE OFFICERS were acting with complete authority and ratification of their principal, Defendant COUNTY.

27. Defendants DOES 1-10 are sued in their individual capacities.

28. On information and belief, Defendants DOES 1-10 were residents of the County of Santa Barbara, California.

29. In doing the acts and failing and omitting to act as described herein, Defendants DOES 1-10 were acting on the implied and actual permission and consent of Defendants COUNTY, and the SBSO and SBMJ.

30. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of this Court to amend this Complaint when the true names and capacities of these defendants have been ascertained.

31. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

32. On May 7, 2025, Plaintiffs filed comprehensive and timely claims for damages with the County of Santa Barbara pursuant to applicable sections of the California Government Code. The claims were rejected by operation of law on June 21, 2025. As of the date of this filing, Plaintiffs have not received any response to the claims.

SECOND AMENDED COMPLAINT FOR DAMAGES

**<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>**

33.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

34.    On or about November 8, 2024, law enforcement officials arrested and detained Ms. Covarrubias and transported her to SBMJ.

35.    Shortly after arriving at SBMJ, and before Ms. Covarrubias was booked, Ms. Covarrubias attempted to commit suicide by choking herself. Ms. Covarrubias was then transported to a nearby hospital for treatment based on her suicide attempt, and was booked into SBMJ in absentia.

36.    Ms. Covarrubias was discharged from the hospital and returned to SBMJ on November 9, 2024.

37.    In the morning of following day, November 10, 2024, Ms. Covarrubias was seen by Defendant GONZALEZ. During this visit, Ms. Covarrubias was extremely agitated and upset. Ms. Covarrubias expressed to GONZALEZ, while crying, that she desperately needed to be with her children and further expressed desperation that her family had not forgiven her for past wrongs. Ms. Covarrubias then fainted and fell onto the ground. GONZALEZ then directed that Ms. Covarrubias be placed in an observation cell.

38.    At SBMJ, observation cells include a telephone that is connected to a wall mount via a metal cord that is approximately 12 inches long. On information and belief, inmates and detainees in observation cells at SBMJ are also provided various supplies, including a blanket. On information and belief, observation cells do not allow for continuous monitoring of their occupants, and jail staff are instead required to conduct observation patrols at a minimum of every fifteen minutes to check on occupants' welfare and condition.

39.    While Ms. Covarrubias was then being led to an observation cell by, on information and belief, Defendants DURNIN-MOORE, HANSEN, GONZALEZ, and/or

SECOND AMENDED COMPLAINT FOR DAMAGES

FORTENBERRY, Ms. Covarrubias stated that she was going to kill herself. In response, Ms. Covarrubias was then placed in a safety cell for suicide watch by these Defendants.

40.    On information and belief, safety cells at SBMJ, wherein inmates and detainees are placed on suicide watch, are specially designed to prevent inmates from committing suicide while inside, and include no corded telephone. Additionally, on information and belief, inmates and detainees placed in safety cells are not allowed access to blankets or clothing, and are instead provided a "safety smock" that is specially designed to prevent the wearer from using it as an instrument of suicide.

41.    On information and belief, for the bulk of the remainder of November 10, 2024, while in her safety cell, Ms. Covarrubias was visibly distraught and was seen crying on at least one occasion.

42.    That evening, during the early hours of November 11, 2024, Ms. Covarrubias experienced an anxiety attack and was medicated by SBMJ nursing staff.

43.    A few hours later, in the morning of November 11, 2024, Ms. Covarrubias was seen by Defendant WELLS for approximately five minutes, after expressing that she did not wish to speak to mental health staff. Ms. Covarrubias had cloaked herself in her safety smock and, when spoken to by WELLS, reacted with a loud outburst, swearing and repeating that she was desperate to be with her children. Based on this visit, WELLS elected to "step down" Ms. Covarrubias from the safety cell, wherein Ms. Covarrubias was on suicide watch, and have her moved to an observation cell.

44.    Ms. Covarrubias was transported to an observation cell by, on information and belief, Defendants FORTENBERRY, TAYLOR, and/or WELLS. Ms. Covarrubias spent the remainder of November 11 in the observation cell and, again, was visibly distraught and was repeatedly seen crying during that time.

45.    In the morning of November 12, 2024, Ms. Covarrubias was seen again by Defendant WELLS at her observation cell. Ms. Covarrubias repeated to WELLS that she needed to be with her children and stated that she wanted to kill herself. WELLS asked Ms. Covarrubias if she had a plan for how to kill herself, and Ms. Covarrubias responded

12

SECOND AMENDED COMPLAINT FOR DAMAGES

that she would hang herself. Ms. Covarrubias also informed WELLS that, outside of jail, she regularly saw a psychiatrist and was prescribed medication for mental health issues including anxiety.

46. In response to Ms. Covarrubias's statement that she would hang herself, Ms. Covarrubias was then returned to a safety cell for suicide watch by, on information and belief, Defendants FORTENBERRY, COOLMAN, TAYLOR, and/or WELLS. Ms. Covarrubias spent the remainder of November 12 in the safety cell and, again, was visibly distraught and was repeatedly seen crying and talking to herself during that time and into the early morning hours of November 13.

47. During the evening of November 12, Ms. Covarrubias was seen at her safety cell by Defendant LOPEZ to determine whether Ms. Covarrubias should be placed on a psychiatric hold pursuant to California Welfare and Institutions Code § 5150, after LOPEZ had been informed by other staff of what had occurred with Ms. Covarrubias at the jail thus far. Ms. Covarrubias was highly agitated, expressed that she desperately needed to be with her children, who she feared were being taken away by aliens, and informed LOPEZ that she had attempted to kill herself during the incident for which she had been arrested on November 8. During this visit, it was noted that Ms. Covarrubias needed to be evaluated and treated further due to her behavior. Nevertheless, LOPEZ declined to place Ms. Covarrubias on a 5150 hold.

48. In the morning of November 13, 2024, Ms. Covarrubias was seen again at her safety cell by Defendant GONZALEZ. Ms. Covarrubias again stated that she desperately wanted to be with her children, and did not respond to all questions that were asked of her. After meeting with Ms. Covarrubias for five minutes, GONZALEZ determined that, in spite of her recent suicide attempt and multiple recent suicidal threats, as well as other factors, Ms. Covarrubias was not a danger to herself, and elected to "step down" Ms. Covarrubias from the safety cell and have her returned to an observation cell.

49. Ms. Covarrubias was transported to an observation cell by, on information and belief, Defendants HANSEN, TAYLOR, and/or GONZALEZ.

SECOND AMENDED COMPLAINT FOR DAMAGES

50. During the early afternoon of November 13, Defendant SAFAI visited Ms. Covarrubias at her cell for a psychological evaluation, in light of Ms. Covarrubias's behavior and suicide risk. However, SAFAI performed no evaluation of Ms. Covarrubias and instead left and scheduled Ms. Covarrubias for another appointment one week later, and did not direct that she be returned to a safety cell.

51. On multiple occasions on November 13, Defendant OCCHIPINTI visited Ms. Covarrubias at her cell. At those times, on information and belief, Ms. Covarrubias continued to exhibit bizarre behavior that would indicate to a reasonable official that she was a danger to herself and should not be kept in an observation cell. Nevertheless, OCCHIPINTI did not direct that Ms. Covarrubias be returned to a safety cell.

52. During the afternoon of November 13 in her observation cell, Ms. Covarrubias used the wall-mounted telephone to call a relative. During the call, Ms. Covarrubias repeatedly cried and expressed desperation to be with her children; stated that she was "being punished"; asked the relative to give all of the money in Ms. Covarrubias's wallet to the father of her children so he could use it to take care of the children; stated that everyone was angry with her; stated that the experience was "torture" and that she had attempted to kill herself multiple times; stated that she did not know what to do; stated that she was thinking of hurting herself because she had done stupid things that there was no turning back from; and stated that she would be gone for a long time.

53. On information and belief, all phone calls made or received in SBMJ cells are recorded by Defendants, and Defendants can and did listen to Ms. Covarrubias's call in real time. Nevertheless, following this phone call, no Defendant directed that Ms. Covarrubias be returned to a safety cell or placed on a 5150 hold.

54. Ms. Covarrubias continued to cry in her observation cell that afternoon after her phone call, which Defendant HANSEN and, on information and belief, other Defendants observed and were aware of.

55. Approximately three hours after Ms. Covarrubias's phone call, and more than fifteen minutes after an observation patrol conducted by Defendant QUINTERO,

14

SECOND AMENDED COMPLAINT FOR DAMAGES

Defendants DURNIN-MOORE and MADRIGAL returned to the hallway in which Ms. Covarrubias's observation cell was located, and found Ms. Covarrubias hanging in her cell, with the wall-mounted telephone's cord wrapped around her neck.

56. On information and belief, at the time Ms. Covarrubias hanged herself in her cell, Defendants DURNIN-MOORE, MADRIGAL, QUINTERO, ESTRADA, HANSEN, and FORTENBERRY, DOES 1-10, and other SBSO deputies at SBMJ were responsible for conducting observations of the observation cells a minimum of every fifteen minutes, but failed to timely do so.

57. Based on Ms. Covarrubias's repeated desperate and suicidal statements, and recent suicide attempt, of which Defendants were aware, Defendants should have placed and kept Ms. Covarrubias on suicide watch on November 13, 2024, and/or placed her on a 5150 hold.

58. On information and belief, the Defendants who evaluated Ms. Covarrubias were not qualified to perform medical and/or mental health screening, to identify whether a detainee or inmate posed a suicide risk, or to appropriately assign detainees to cells based on their medical and/or mental health condition and suicide risk.

59. Despite Defendants' knowledge of Ms. Covarrubias's suicidal statements, she was taken off of suicide watch on November 13, hours before her ultimate suicide, and was placed in a single observation cell containing a corded telephone, despite her recent attempt to commit suicide by choking, and her recent threat to hang herself. On information and belief, SBSD and SBMJ suicide watch protocols require placement of detainees in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that is visible via a continuous remote video feed that is continually monitored by jail staff; that contains no elevated objects/locations to which items may be tied; and that contains no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects. Pursuant to Title 15 and basic jail training, suicide watch protocols further require frequent in-person monitoring of detainees at 15-minute intervals by jail staff.

SECOND AMENDED COMPLAINT FOR DAMAGES

60. On information and belief, contrary to the suicide watch protocols, the observation cell into which Defendants placed Ms. Covarrubias was housed was not subject to full and continuous video monitoring of the entire cell by jail staff and, on information and belief, the video feed was not continuously monitored by jail staff, including Defendants. Also contrary to the suicide watch protocols, the cell where Ms. Covarrubias was housed contained a phone fixed against the wall with a cord attached and, on information and belief, was monitored by Defendants less frequently than every 15 minutes.

61. These failures to increase the frequency of monitoring of Ms. Covarrubias or move her to a suicide watch protocol–compliant cell was due in part to the dismissal of her suicidal statements by Defendants.

62. Ms. Covarrubias's cell was not checked until approximately 4:48 p.m., which, on information and belief, was a substantial period of time after her death by suicide. Defendants should have observed Ms. Covarrubias immediately had they been continuously monitoring her cell, or far sooner had they been performing checks every 15 minutes. Had they done so, they would have found Ms. Covarrubias within enough time to provide life-saving medical attention. The failure of the Defendants to continuously monitor Ms. Covarrubias or to check on her at 15-minute intervals as required by suicide protocols, Title 15, and basic police training, directly resulted in her death.

63. After delayed medical attention and unsuccessful attempts to resuscitate Ms. Covarrubias, she was pronounced deceased by paramedics.

64. As alleged above, Defendants failed to provide appropriate medical and/or mental health attention to Ms. Covarrubias before she hanged herself. These failures include, but are not limited to, these Defendants' failures to recognize the increased mental health and suicide risks posed by Ms. Covarrubias, of which she had advised Defendants.

65. Defendants were negligent in their conduct, including but not limited to negligence in SBMJ procedures for screening, intake and housing of those in need of

16

SECOND AMENDED COMPLAINT FOR DAMAGES

mental and medical health care, those who verbalize suicidal threats or ideation, and those who otherwise present identifiable suicide risks. Defendants were negligently trained with respect to providing mental and medical care to detainees suffering from mental illness and presenting suicide risks.

66.    Alternatively, Defendant COUNTY unreasonably failed to equip SBMJ with sufficient suicide watch–compliant cells that did not provide detainees with the means by which to kill themselves while under the custody, care, and supervision of the COUNTY, WELLPATH, and CFMG.

67.    Each of the named and unnamed Defendants were integral participants in the denial of medical and mental health care, the failure to protect Ms. Covarrubias, the negligent treatment of Ms. Covarrubias, and other violations of Ms. Covarrubias's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations

## FIRST CLAIM FOR RELIEF

**Fourteenth Amendment – Failure to Protect (42 U.S.C. § 1983)**

**(Plaintiffs against Defendants DURNIN-MOORE, MADRIGAL, QUINTERO, ESTRADA, HANSEN, FORTENBERRY, TAYLOR, COOLMAN, OCCHIPINTI, WELLS, GONZALEZ, LOPEZ, SAFAI, and DOES 1-10)**

68.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

69.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail officials are deliberately indifferent to foreseeable risks of harm to detainees.

70.    As alleged above, Defendants had actual knowledge of Ms. Covarrubias's suicidal ideations and related risks to her safety based on her statements and conduct to Defendants indicating that she was thinking of or intending to kill herself.

71.    Despite Defendants having actual knowledge of Ms. Covarrubias's suicidal

SECOND AMENDED COMPLAINT FOR DAMAGES

ideations, on information and belief, she was not properly and adequately screened during intake. Moreover, Ms. Covarrubias was improperly housed at SBMJ, including in that she was not placed in a continuously monitored cell; in that items such as a corded phone, with which she could (and did) kill herself, were not removed from her cell; and in that she was not in the first instance placed in a cell that contained no such items. Defendants were objectively indifferent to the foreseeable and known risk that Ms. Covarrubias would harm herself or commit suicide when they failed to place her in an adequately monitored cell and failed to adequately monitor her (both in terms of frequency and closeness of attention). These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Ms. Covarrubias's serious risk of harm, and the indifference to her risk of harm as alleged above was substantial.

72.    Defendants returned Ms. Covarrubias to a cell that was not adequate to mitigate her suicide risk, having actual knowledge of her suicidal ideations, thereby making an intentional decision to house her in a cell that was not suicide-watch compliant. This demonstrates deliberate indifference. Defendants were deliberately indifferent to Ms. Covarrubias's serious risk of harm when they failed to ensure that prompt and adequate attention was provided to her in the form of suicide prevention. These defendants failed to continuously monitor Ms. Covarrubias.

73.    Defendants thus made intentional decisions regarding Ms. Covarrubias's confinement as alleged above. These conditions put her at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to protect her from this risk despite obvious consequences of not adequately acting upon her suicidal ideations, and by not taking reasonable action to protect her from her suicidal ideations, Defendants caused her injury and death.

74.    Ms. Covarrubias's risk of harm was serious, in that the failure to respond to her suicidal ideations and desire to harm herself resulted in her death.

75.    Ms. Covarrubias was entitled to receive protection from the known risk of harm to her life while in the care and custody of the COUNTY, WELLPATH, and CFMG

SECOND AMENDED COMPLAINT FOR DAMAGES

while detained/incarcerated at SBMJ. In doing the acts complained of, Defendants failed to protect her from a known risk of serious harm in violation of her rights under the Due Process Clause of the Fourteenth Amendment.

76.    Defendants knew that failure to protect Ms. Covarrubias could result in Ms. Covarrubias harming or killing herself, but disregarded that serious risk, directly causing Ms. Covarrubias great bodily harm and death.

77.    Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Ms. Covarrubias. Defendants were deliberately indifferent to a substantial risk of serious harm to Ms. Covarrubias. Defendants' conduct served no legitimate penological purpose.

78.    Defendants are liable for the failure to protect Ms. Covarrubias, and for her injuries and death, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

79.    As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died and lost her earning capacity.

80.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

81.    The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Ms. Covarrubias, and therefore warrants the imposition of exemplary and punitive damages.

82.    Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and seek survival and wrongful death damages under this claim. Plaintiffs seek damages, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of

19

SECOND AMENDED COMPLAINT FOR DAMAGES

life and of enjoyment of life, and for their loss of financial support. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

### (Plaintiffs against Defendants DURNIN-MOORE, MADRIGAL, QUINTERO, ESTRADA, HANSEN, FORTENBERRY, TAYLOR, COOLMAN, OCCHIPINTI, WELLS, GONZALEZ, LOPEZ, SAFAI, and DOES 1-10)

83.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

84.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail or prison officials are deliberately indifferent to detainees' medical needs.

85.    As alleged above, Defendants had actual knowledge of Ms. Covarrubias's suicidal ideations and related mental health needs.

86.    Despite Defendants having actual knowledge of Ms. Covarrubias's suicidal ideations at the time of and following her booking at SBMJ, on information and belief, she was not properly and adequately screened by a Registered Nurse or any other medical or mental health professional during intake to determine her fitness for incarceration. The mental health evaluation that she did receive was cursory, inadequate, and did not comply with basic police training and SBMJ protocols regarding handling situations where a detainee states or otherwise clearly indicates that she is suicidal. Ms. Covarrubias was denied prompt and adequate medical attention when these Defendants improperly and prematurely released her from the minimal and inadequate suicide evaluation they performed, even though she remained suicidal. This demonstrates deliberate indifference.

87.    Moreover, despite Ms. Covarrubias's clear statements that she was suicidal, she was improperly housed at SBMJ, including in that she was not placed on suicide watch and/or in a continuously monitored cell, and that items such as a telephone cord,

SECOND AMENDED COMPLAINT FOR DAMAGES

with which she could (and did) harm herself, were not removed from her cell. Defendants were objectively indifferent to Ms. Covarrubias's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to her at SBMJ as described herein. These actions and omissions on the part of these Defendants were sufficiently harmful to evidence deliberate indifference to Ms. Covarrubias's serious and immediate medical needs in the form of suicidal ideation, and the indifference to her medical needs as alleged above was substantial.

88.    Defendants placed Ms. Covarrubias's in her cell, a cell that was not adequate to mitigate her suicide risk, having actual knowledge of her suicidal ideations. Defendants were deliberately indifferent to Ms. Covarrubias's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention was provided to her. These defendants failed to secure or provide a competent psychiatric evaluation for Ms. Covarrubias. Upon information and belief, these defendants failed to notify other officials of her suicidal ideations. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to Ms. Covarrubias's medical need as alleged above was substantial.

89.    Despite their awareness of Ms. Covarrubias's desire to kill herself, Defendants failed to keep her on suicide watch. These Defendants failed to continuously monitor her or place her in an adequately monitored cell, and failed to otherwise properly and promptly address her suicidal ideations. These Defendants took no actions to remove items from her cell that she could use to harm herself, including the corded telephone. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to Ms. Covarrubias's medical need as alleged above was substantial.

90.    Defendants thus made intentional decisions regarding Ms. Covarrubias's confinement as alleged above. These conditions put her at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating her suicidal ideations, and by not treating her

SECOND AMENDED COMPLAINT FOR DAMAGES

suicidal ideations, Defendants caused her injury and death.

91.  Ms. Covarrubias's medical need was serious, in that the failure to treat her suicidal ideations and desire to harm herself resulted in her death. Her need was obvious, in that she stated that she was suicidal and presented a suicidal affect.

92.  Ms. Covarrubias was entitled to receive necessary medical attention while in the care and custody of the COUNTY, WELLPATH, and CFMG while detained/incarcerated at SBMJ.  In doing the acts complained of, Defendants deprived her of urgently needed medical care in violation of her rights under the Due Process Clause of the Fourteenth Amendment.

93.  Defendants knew that failure to provide timely medical treatment to Ms. Covarrubias could result in her harming or killing herself, but disregarded that serious medical need, directly causing her great bodily harm and death.

94.  Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of Ms. Covarrubias. Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of Ms. Covarrubias. Defendants' conduct served no legitimate penological purpose.

95.  Defendants are liable for the denial of medical care to Ms. Covarrubias, and for her injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

96.  As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died and lost her earning capacity.

97.  Also as a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

SECOND AMENDED COMPLAINT FOR DAMAGES

98.     The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Ms. Covarrubias, and therefore warrants the imposition of exemplary and punitive damages.

99.     Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and seek survival and wrongful death damages under this claim. Plaintiffs seek damages, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of life and of enjoyment of life, and for their loss of financial support. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## THIRD CLAIM FOR RELIEF

**First and Fourteenth Amendments – Substantive Due Process, Interference with Familial Association and Relationship (42 U.S.C. § 1983)**

**(Plaintiffs against Defendants DURNIN-MOORE, MADRIGAL, QUINTERO, ESTRADA, HANSEN, FORTENBERRY, TAYLOR, COOLMAN, OCCHIPINTI, WELLS, GONZALEZ, LOPEZ, SAFAI, and DOES 1-10)**

100.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

101.    Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their mother, Ms. Covarrubias.

102.    As alleged above, Defendants had actual knowledge of Ms. Covarrubias's suicidal ideations and intentions, yet failed to take necessary steps to protect her from harm, including by placing her in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that was visible via a continuous remote video feed that is continually monitored by jail staff; that contained no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes,

23

cords, bedsheets, and sharp objects; and where she would be monitored in person at 15-minute intervals by jail staff.

103.    Defendants further failed to secure adequate medical or mental health treatment for Ms. Covarrubias or provide same, as alleged above, despite their knowledge of her serious need for such care.

104.    These actions of Defendants, along with other undiscovered conduct, shock the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of Ms. Covarrubias and Plaintiffs.

105.    Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with her familial relationship with Ms. Covarrubias, their mother.

106.    As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. Also, as a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

107.    The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of Ms. Covarrubias, and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

108.    Plaintiffs bring this claim in their individual capacities and seek compensatory damages under this claim, including for the loss of love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, as well as for their own emotional distress, mental anguish, and pain. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988.

SECOND AMENDED COMPLAINT FOR DAMAGES

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### (By Plaintiffs Against Defendant COUNTY)

109.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

110.    The acts of the individual Defendants deprived Ms. Covarrubias and Plaintiffs of their particular rights under the United States Constitution, as alleged herein.

111.    The individual Defendants acted under color of law.

112.    On information and belief, Defendant COUNTY failed to properly and adequately train the individual Defendants on subject matters COUNTY knew these other Defendants were virtually certain to have to address in the course of their work for COUNTY, including but not limited to the provision of medical and mental health attention and the provision of protection to suicidal detainees.

113.    The training policies of Defendant COUNTY were not adequate to train its deputies and medical and mental health staff at SBSO and the SBMJ to handle the usual and recurring situations with which they must deal, including but not limited to medical and mental health screening during intake at SBMJ, the provision of prompt and adequate medical and mental health care, and the implementation of suicide watch protocols for detainees who pose a known risk of self-harm. As stated above, Ms. Covarrubias was not provided with needed health care. This is a clear violation of the policies of SBSO and the SBMJ, and Defendant COUNTY did not adequately train the individual Defendants with regard to said policies.

114.    Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies and medical and mental health staff adequately.

115.    The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiffs' and Ms. Covarrubias's rights by the individual Defendants; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of

25

SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs' and Ms. Covarrubias's rights as to be the moving force that caused their ultimate injuries.

116.   As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. As a direct and proximate cause of the acts of the individual Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives. Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

117.   Plaintiffs bring this claim as successor in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Policy, or Practice

### (42 U.S.C. § 1983)

### (By Plaintiffs Against Defendant COUNTY)

118.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

119.   The individual Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not providing needed medical and mental health care or immediate screening by a nurse to evaluate the overall fitness of those in custody for incarceration; of mishandling situations with individuals who suffer from mental health

SECOND AMENDED COMPLAINT FOR DAMAGES

issues; and of failing to place detainees who communicate suicidal intentions to staff on suicide watch and following suicide watch protocols.

120. On information and belief, the individual Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Ms. Covarrubias's death.

121. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Ms. Covarrubias. The aforementioned acts and omissions also caused Ms. Covarrubias's pain and suffering, loss of enjoyment of life, and death.

122. Defendant COUNTY, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Ms. Covarrubias, Plaintiffs, and other individuals similarly situated.

123. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant COUNTY were affirmatively linked to and were a significantly influential force behind the injuries of Ms. Covarrubias and Plaintiffs.

124. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Ms. Covarrubias. The aforementioned acts and omissions also caused Ms. Covarrubias's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

125. Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival, wrongful death, and other compensatory damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of

SECOND AMENDED COMPLAINT FOR DAMAGES

earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. § 1988.

### SIXTH CLAIM FOR RELIEF

**Americans with Disabilities Act (42 U.S.C. § 12132)**

**(By Plaintiffs Against Defendants COUNTY, WELLPATH, and CFMG)**

126. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

127. Ms. Covarrubias was a "qualified individual" with a mental illness that substantially limited her ability to care for herself and control her mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

128. COUNTY, WELLPATH, and CFMG are covered entities for purposes of enforcement of the ADA as explained by regulations promulgated under that law.

129. Under the ADA, COUNTY, WELLPATH, and CFMG are mandated to develop effective procedures for the care of mentally ill individuals in their custody, for interactions with individuals with mental disabilities, and to ensure the protection of these individuals' personal and civil rights.

130. In enacting the ADA, Congress found that individuals with disabilities have been isolated and segregated, constituting a form of discrimination that is a pervasive social problem. 42 U.S.C. § 12101(a)(2).

131. COUNTY, WELLPATH, and CFMG are mandated under the ADA not to discriminate against any qualified individual on the basis of disability in any services or facilities. 42 U.S.C. § 12182(a).

132. Defendants violated the ADA by: (1) COUNTY, WELLPATH, and CFMG failing to properly train their employees to respond with appropriate care to individuals with mental health impairments in their custody, including by providing protection to them from known risks of harm, including self-harm, and by providing medical care they are known to need; and (2) the individual Defendants failing to follow procedures for

SECOND AMENDED COMPLAINT FOR DAMAGES

intervention to prevent or stop attempts at self-harm or suicide by mentally ill detainees, including those who known to pose a risk of same

133. As a direct and proximate result of Defendants' acts and omissions as alleged above, Ms. Covarrubias was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

134. Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of life, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of her love, companionship, guidance, advice, and support. Plaintiffs also seeks reasonable attorney's fees and costs under this claim.

### SEVENTH CLAIM FOR RELIEF

**Negligence – Wrongful Death and Survival**

**(By Plaintiffs against all Defendants)**

135. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

136. The individual Defendants were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes providing prompt and adequate medical and mental health care to individuals in their custody, identifying and handling medical and mental health issues, screening detainees for fitness for incarceration, determining housing classification status for detainees, and protecting detainees from reasonably foreseeable harm from themselves or others.

137. The individual Defendants breached their duty of care. The actions and inactions of these Defendants were negligent and reckless, including but not limited to, the

SECOND AMENDED COMPLAINT FOR DAMAGES

neglect tactics and handling of the situation with Ms. Covarrubias, including failing to identify serious medical and mental health issues, failing to provide prompt medical and mental health care to her, failing to house her in a suicide-watch compliant cell, and failing to take reasonable steps to prevent her death by suicide after they had notice of her suicidal intentions, including by monitoring her by live video feed and/or by conducting required in-person observations at 15-minute intervals. Moreover, COUNTY, WELLPATH, and CFMG failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Ms. Covarrubias, and to ensure that adequate housing options were available to protect suicidal detainees, including housing options that contained no means by which suicidal detainees could readily act on their suicidal intentions.

138.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Ms. Covarrubias was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

139.   COUNTY, WELLPATH, and CFMG are vicariously liable for the wrongful acts of the individual Defendants DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability, and pursuant to section 2338 of the California Civil Code.

140.   Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of Ms. Covarrubias's love, companionship, guidance, advice, and support.

SECOND AMENDED COMPLAINT FOR DAMAGES

## EIGHTH CLAIM FOR RELIEF

### Failure to Summon Medical Care (Cal. Gov. Code § 845.6)

### (By Plaintiffs against all Defendants)

141.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

142.    Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that a detainee under his care or supervision is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

143.    Defendants were aware of Ms. Covarrubias's medical emergency, in that she had informed them of her suicidal ideations and intention to kill herself. In other words, as alleged above, Ms. Covarrubias's medical emergency was obvious. Defendants are not entitled to immunity where a detainee is in obvious need of medical care.

144.    Despite Defendants' actual knowledge that Ms. Covarrubias was in need of immediate medical and mental care as alleged above, Defendants failed to (1) conduct a proper medical and mental health assessment and/or suicide evaluation of her; (2) summon immediate emergency medical assistance for her; (3) place her on suicide watch when she was known to be suicidal and have a propensity for self-harm; (4) adequately monitor and supervise her; or (5) recognize and identify indications of suicidal tendencies.

145.    COUNTY, WELLPATH, and CFMG are vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability, and pursuant to section 2338 of the California Civil Code. California Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the

31

SECOND AMENDED COMPLAINT FOR DAMAGES

same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that a detainee is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

146. As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ms. Covarrubias, and will continue to be so deprived for the remainder of their natural lives.

147. Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and in their individual capacities and seek survival and wrongful death damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their Ms. Covarrubias's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs.

## NINTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### (By Plaintiffs against all Defendants)

148. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

149. California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

32

SECOND AMENDED COMPLAINT FOR DAMAGES

150.   Here, Defendants acted with reckless disregard for Ms. Covarrubias's constitutional rights as set forth above. In particular, Defendants had specific knowledge of Ms. Covarrubias's suicidal ideation and intention to harm herself but failed to take action to protect her, demonstrating reckless disregard for her Fourteenth Amendment rights.

151.   When Defendants engaged in their misconduct and inactions as alleged above—including failing to provide medical care and mental health treatment to Ms. Covarrubias, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that she desired to harm or kill herself— Defendants acted with reckless disregard for her constitutional rights, including her constitutional right to timely and adequate medical attention and to protection from harm.

152.   The conduct of Defendants as alleged above was a substantial factor in causing Ms. Covarrubias's harms, losses, injuries, and damages.

153.   COUNTY, WELLPATH, and CFMG are vicariously liable for the wrongful acts of all named Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability, and pursuant to section 2338 of the California Civil Code.

154.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Ms. Covarrubias's rights, justifying an award of exemplary and punitive damages as to the individual Defendants.

155.   As a direct and proximate result of the aforementioned conduct, Ms. Covarrubias suffered injuries, including pain and suffering, and then died, losing her earning capacity.

156.   Plaintiffs bring this claim as successors in interest to Ms. Covarrubias and seek survival damages under this claim, including for Ms. Covarrubias's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiffs also seek reasonable costs under this claim. Under the provisions of Cal. Civ. Code § 52,

SECOND AMENDED COMPLAINT FOR DAMAGES

Defendants are also liable for reasonable attorney's fees and a civil penalty, including a multiplier.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT FOR DAMAGES

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants COUNTY OF SANTA BARBARA; WELLPATH; CALIFORNIA FORENSIC MEDICAL GROUP, INC.; CAMRYN DURNIN-MOORE; ANTONIO RODRIGUEZ MADRIGAL; JOAQUIN ARRELLANO QUINTERO; RAYMONDO JESUS ESTRADA; SAMANTHA HANSEN; KAYLA FORTENBERRY; TRAVIS TAYLOR; ERICA COOLMAN; AMANDA OCCHIPINTI; DEBORAH WELLS; JOE GONZALEZ; JESSICA LOPEZ; YALDA SAFAI; and DOES 1-10 as follows:

a.  For compensatory damages and whatever other amount may be proven at trial, including survival damages and wrongful death damages under federal and state law;

b.  For loss of financial support;

c.  For pre-death pain and suffering, loss of life, and loss of enjoyment of life according to proof at trial;

d.  For punitive damages against the individual Defendants according to proof at trial;

e.  For statutory damages;

f.  For interest;

g.  For reasonable attorney's fees, including litigation expenses;

h.  For costs of suit; and

i.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: July 29, 2026        **LAW OFFICES OF DALE K. GALIPO**


By: _____
              Dale K. Galipo
              Benjamin S. Levine
              *Attorneys for Plaintiffs*

---

35

SECOND AMENDED COMPLAINT FOR DAMAGES

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury for all causes of action to which they are entitled to a jury.


DATED: July 29, 2026   **LAW OFFICES OF DALE K. GALIPO**


      By: _____

        Dale K. Galipo
        Benjamin S. Levine
        *Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT FOR DAMAGES